May it please the court, Marco Simons for the Plaintiff's Appellants. I will try to save some time, but I'll keep track of it myself. Why did the Atuar come here? They came here because for 30 years Occidental Petroleum extracted oil from their communities and left behind a legacy. I'm sorry, did you say your name and who you represent? Sorry, perhaps I didn't do so loudly enough, Your Honor. Okay, we're sorry. Marco Simons for the Plaintiff's Appellants. Shall I start over? They are? The Atuar Plaintiffs, Tomas Manos Carijano. That's it, I'm sorry. Atuar. Atuar. As well as Amazon Watch. The Atuar came here because for 30 years Occidental Petroleum extracted oil from their communities and left behind a legacy of toxic contamination and deception about the dangers of that pollution. They came here because after Oxy left Peru, they knew that this was the one place where they could be assured of gaining jurisdiction over Oxy and where they had a shot at justice. And they came here because during the time that Oxy was polluting their communities, its decision making was directed from its offices here in Los Angeles. And they came here because they knew that Oxy should have no problem defending a suit in a courthouse 10 miles from its global headquarters. And where is Oxy Peru in existence today or is it subsumed within Oxy? Oxy Perijuana continues to exist as far as we know. It is a California corporation. And its headquarters are where? I don't know where its headquarters are, Your Honor. As far as I know, Oxy has no more operations in Peru. Well, they sold them about 8 years ago to a third party. They sold Block 1AB 9 years ago to a third party. They continue to have other operations in Peru after that, but the record shows that at the moment they have no assets or operations in Peru. The choice to come here to Los Angeles, as other circuits have held, was entitled to substantial deference despite the fact that these were foreign plaintiffs. And Oxy's attempt to move the case out of its own hometown should be viewed with extreme suspicion. The district court, however, dismissed the case on the basis of foreign nonconvenience without even hearing oral argument in a decision that repeatedly fails to give adequate consideration to the relevant law and facts. The district court denied discovery despite the fact that there are material disputed facts, failed to give adequate deference to the plaintiff's choice of forum, relied on disputed facts in determining the adequacy of the forum and the public and private interest factors, failed to consider material factors, and failed to impose conditions on the dismissal without even explaining any reason for doing so. What is the law that gives rise to plaintiff's cause of action? Plaintiff's cause of action arise under the common law of California or potentially Peru, although there was no choice of law analysis really performed here, and under statutory law of California under the unfair competition law, Section 17200 of the Business and Professions Code. So it's both a California statutory claim and common law claims for essentially toxic torts and similar claims. And so you want to apply California law to the conduct of Oxy in Peru? Well, again, the district court basically said that California or Peruvian law may apply here and that choice of law is a neutral factor. We believe that under California's choice of law test, the defendants certainly haven't shown a basis for displacing California law, and California's unfair competition law does apply to extraterritorial activity of California corporations as long as some of the conduct occurred in California or the benefits of that conduct accrued in California. So we don't know whether, because the district judge didn't determine that there was any conflict between Peruvian substantive law and California law and didn't do that analysis, we don't know whether there is any Peruvian law that even would apply to this. Well, defendants, under the rubric of determining the adequacy of the foreign forum, defendants did submit declarations of foreign law. Defendants did not argue any material conflicts that would displace California law under California's choice of law test. So that is their burden to do, of course. They did not do so. But I take it the real question that you want us to focus on is the forum? Well, there are several questions. And I think the district court's failure to give adequate consideration sort of infected the entire decision here. In terms of the adequacy of the forum, we don't think the district court gave proper consideration here because the district court relied on essentially disputed evidence about the state of corruption in the Peruvian courts while denying discovery despite the fact that there was evidence in the record that Occidental Petroleum itself may have been investigated for corruption by the Peruvian government. We never got discovery over that question. The district court failed to consider one of the very relevant private interest factors in this case, which is the enforceability of a judgment. The words enforceability of a judgment appear in the district court's decision, but they appear once and there's no analysis or discussion of the fact that plaintiffs would have a very hard time enforcing a judgment in Peru against the defendants here because they no longer have any assets or operations there. And in general, the evidence submitted showed that enforcing judgments in Peru is very difficult, even on ordinary... Is there any problem enforcing a judgment here? In California? Yes. I don't see why there would be any problem enforcing... Is there any problem enforcing a Peruvian judgment in California? Well, first of all, there may be, because defendants are entitled under California's Enforcement of Foreign Money Judgments Act, they're entitled to argue that the Peruvian courts don't have adequate due process. Despite the fact that they are here arguing today that the Peruvian courts are an adequate forum, there's nothing in the district court's order that would prevent them from coming back here and arguing that the Peruvian courts as a general matter do not provide due process. And second, there's nothing in California's statutes that allow for the enforcement of a foreign injunction. It's only foreign money judgments. And injunctive relief is a major part of what the plaintiffs were seeking here. The defendant submitted one case... How are you now seeking injunctive relief against a dead company? Well, we're seeking injunctive relief... Operations. We're seeking injunctive relief in several forms. We think that Oxy needs to go back and clean up the mess that it caused. You're seeking a mandatory cleanup kind of injunction. That's among the injunctions that we're seeking, yes, Your Honor. And then medical monitoring and some other kind of... Medical monitoring, a stop to Oxy's deceptive practices, a requirement that they investigate and disclose the pollution in the, in Block 1AB. The last point on the issue of enforceability, the defendant submitted one case showing that a Peruvian judgment was enforced in the United States. It was a bankruptcy court case that took seven years to get the judgment enforced. I don't think that shows that enforceability of judgments is going to be easy. In fact, as a practical matter, you go back to Peru, you get, you know, a judgment. I am not, I mean, we can, I'll go into the inadequacy of the forum issues with the other side. But you get a judgment. You still then have to come back here. Whereas if you're not sent down there to litigate, then you can wrap it all up in one action. That's correct, Your Honor. And in fact... Which goes to the convenience. In fact, Your Honor, that, you know, all of this discussion is somewhat academic because the district court never even considered enforceability of judgments, so there's nothing to review on that factor. Well, I'm just having trouble envisioning what we're really talking about here because it seems to me that what we're really talking about is enforcing the environmental laws of California in, to conduct that occurred in Peru. And if we can do that because the company is headquartered in California, we're really, we're getting into a situation, are we not, we're down the road, we're enforcing American environmental laws to conduct that occurs all over the world? I don't believe so, Your Honor. In our American courts. The distinction here, I think that... What is the distinction? There's a couple of distinctions. First of all, these are common law claims. They're not statutory environmental law claims. And the way the courts approach... Common law of? The common law. I mean, the way the courts generally approach common law claims... Tell the judge what the claims are. Well, the claims are essentially toxic court claims like battery for exposure to pollutants. Claims like, you know, nuisance claims for... That sort of thing. Right, exactly. And generally, the way courts approach it is, you know, the law of the forum is generally applied and the defendants are free to make a choice of law argument that a foreign law applies. No one disputes that some aspects of Peruvian law may apply in this case. And, for example, in determining the unfair competition law claim, it may be relevant to look to Peruvian law to see whether Oxy was violating the relevant standards there. But overall, California law applies unless it's displaced. That's a fairly basic principle of conflicts of laws. I don't think it amounts to the extraterritorial application of California statutory environmental law in this case. No, not statutory environmental law, but does the law draw the distinction that you are making between extraterritorial application of statutory law and common law? Well, I don't believe it's considered extraterritorial application. I believe it's considered a court simply adjudicating a matter that arises abroad and applying what, at common law, was considered to be the general law. But it sort of is, isn't it? Again, to my knowledge, that's not the way the courts approached it. None of this factored into the district court's decision, of course. I understand. I'm just trying to understand the implications of what you're asking us to do. Yes. I'd like to save the remainder of my time for rebuttal, if that's possible. Good morning, Your Honors. May it please the Court, Daniel Collins, Munger, Tolson, Olson, on behalf of the defendants in this case. The district court did not abuse its discretion in concluding that a lawsuit over the conditions of lands in Peru that are now and have been for 10 years in the hands of another company in Peru and investigated by the Peruvian government and for medical monitoring of Peruvians in Peru belonged in Peru and was a more convenient form. Well, are we talking about that or are we talking about the conduct that occurred in Peru that created the conditions? I think we're talking about both, but the relevant conduct, the alleged misuse of earthen pits, the alleged spilling of produced waters into waterways, those occurred, as alleged in the complaint, in Peru. The primary conduct was in Peru. So it did, but the torts that are alleged have to do with the, you know, obviously it's torts. So there was conduct, whether it be negligence or intentional, which created damage. And so the conduct and the decision-making people were OXI, and OXI is here. So and now, in fact, not only was OXI headquartered here at the time of its contracts with the Peruvian government for the oil leases, but now it's exclusively here. So any documents or information or witnesses who could talk about what was done and how it was done and why it was done and what was not done presumably are here, except for the five Peruvian people, former OXI employees, who have said they're willing to come to the United States to testify about it. In, as it was presented to the district court in connection with opposing their motion for discovery, we effectively said you should assume for purposes of the discovery motion and for and non that our documents are presently in the United States. Right. And we don't need to go into that. And did you name a single specific witness who would not be available here? We did not give specific names. Aren't you obligated to give specific names in terms of determining whether these people would actually be available or not? No. Indeed, that is precisely what Piper Aircraft reversed the Second Circuit for, the Third Circuit for doing. No, but it wasn't just. I mean, that case had, I mean, and in fact, that case, it cuts both for and against you. I mean, it recognized that you give deference to the plaintiff's choice of forum. It recognizes that a dismissal for forum nonconvenience is a very rare and exceptional decision. And it also went to the adequacy of the alternative forum, saying if there is no real adequate alternative forum, which is something I want to ask you about, to the point where there's no real remedy at all, then it's an abuse of discretion to have granted the dismissal. But if you look at page 258 of Piper, because there were a number of different issues. A number of different issues. And they did say that foreign plaintiffs get less deference than domestic. However, you have a domestic party that's still in the case. That's correct, Your Honor. Although. I know you're arguing. Let me address your first question. Then I'll discuss Amazon much. But on page 258, the Supreme Court says the court of appeals found that the problems of proof could not be given any weight because Piper and Hartzell failed to describe with specificity the evidence that would not be able to obtain if trial were held in the United States. Such detail is not necessary. They then described what they thought was sufficient in footnote 27, which was a category-by-category approach to. Right. But you didn't even do that. Yes, we did. We absolutely did. It's in the excerpts of record in the Romi Declaration. We identified the categories of witnesses who were located in Peru, such as the Peruvian government, which had worked with police patrol, and we put the evidence of the agreement with Peru. Yeah, we know about that, but that's not really in this case, is it? I mean, it's only in this case to the extent that what you're going to want to do later, which is probably one of the reasons why you want to go to Peru, is that you're going to want to seek indemnification from the successor company because they've been there for eight years, adding to or doing, you know, whatever your defense is, that they've been there for eight years, also dumping toxic waste. It's more than that. I mean, it goes really not just to the issue of indemnification, but the issue of liability and causation. This property has been ---- Right. But that is a claim. See, this is what I don't get. And having been a representative major in approaching 500 corporations and my former firm having represented Oxy, what I don't get is this is highly unusual for a firm that's headquartered here, decision makers here, lawyers here, documents and witnesses here, to make this kind of a forum nonconvenience motion. And I read your ---- thoroughly read the declaration of your excerpt ---- I mean, your excerpt. And, I mean, you're trying to move this place to a place where you probably have a valid statute of limitations, defense, which you're not waiving and it wasn't a condition, where there's probably not going to be any enforceability of the judgment, where there's not a class action mechanism, where in order to even file a complaint the plaintiffs have to have the evidence first. There's no civil discovery. They have to present their evidence, and then it's at the judge's discretion whether or not to order compulsion of witnesses, order discovery. It's all according to your excerpt. And I think it's unusual for a firm to have a case like this where there's evidence of corruption and discrimination where the courts are underfunded to the point where they can't handle the cases, where there's evidence of corruption and discrimination. You know, why? I don't think it's unusual to ask that a case that is primarily about the condition of real property. It's not about the condition. This case is about how those conditions came to be. Now, Hoxie may be totally not liable for any of these claims. It may be that it didn't do anything wrong, it didn't violate any laws, and you may have an argument whether Peruvian versus California laws apply, but you didn't make it here. We don't know. Alex, you may not be liable, but this is a question about where is it most convenient to have this lawsuit. It is critical in this case whether or not the property in fact was contaminated with the substances they did. That property is in Peru. The Peruvian government did studies of the condition of the property. So you have evidence. You already have evidence of the condition of the property. You're telling me. We pointed out in the record we submitted an agreement between various complainants in Peru and the Pollution Control, which has it that they were undertaking a remediation project. It was evidence that the government had conducted studies of the property. And the key issue also is whether or not the plaintiffs have the harms that they said they've suffered and the community as a whole. And they're willing to come here, you know, and give their evidence here. They've said that. They're willing to come here, provide evidence, provide their testimony, provide their medical doctors. You know, officers should be happy. They don't have to go anywhere. It's going to be so much less expensive for them to litigate this. The evidence of the conditions is already there. All you have to decide is who's responsible for it and at what stages of time. I'd be happy to be in the central district. I wouldn't be happy to be in a court that does not have compulsory process to obtain access to the property and all the records over the last 10 years of what have occurred to it and the studies that have been done to it. I don't think the district court committed a clear abuse of discretion. Now, that is the standard of review in Denver. Well, I think the clear abuse of discretion means you made an error of law. That's one of the definitions of abuse of discretion, and I think there's several areas where this court made an error of law by not giving the deference to the domestic plaintiff that it should have. Maybe it should have rolled first on your other issue, but it didn't. The party's there. Well, I think when it's clear under controlling California state court authority that Amazon Watch has no claims. Oh, it's not clear. See, that's the other problem. I read all those cases that I think the California, in fact, the California Courts of Appeal and even the California Supreme Court have really not made it clear. I mean, I think they've made it clear that you can state a claim for restitution or injunction, but what's really not clear under California law right now is the causal connection that's required to state a claim under that. And we have two cases this week on that, and it's a problem. There were two problems in terms of the substantive state law issue in the standing. The first is the Buckland issue, and in their motion to certify, they conceded they would lose under Buckland. If Buckland remains the law and this court followed Buckland and Walker, they lose. So absent getting the California Supreme Court to reverse it, it has no claim. It drops out as a factor. Because it's so obvious that Amazon Watch should not be in this case, it just drops out as a factor, should not affect the deference. Why is it so obvious? I mean, Amazon Watch is an organization devoted to helping the Anishinaabemowin Indians in Peru. I mean, that's its whole basis for its organization. Why is it so obvious? There's been a lot of money and time and resources helping those peoples. Why is it so obvious they don't belong in this litigation? Because they conceded that if Buckland is the law in California and it is the law on the books until the California Supreme Court says otherwise, and this court and Walker applied it, which is also binding, they lose. But the – what is it? The problem case in – wait, what is it? I don't remember. Tobacco cases. Tobacco cases. On the substantive part of your – it said basically that Buckland and Walker aren't the law on the need to have a restitution claim. You can have a claim for injunctive relief, but left open is what the causal connection is. Right. But that relates to our second issue. We had two issues. One relates to the type of injuries you have to have suffered to require standing, and then the second is what's the necessary causal connection. Tobacco too relates to the second of those issues, and that's approximate. And it was you making that it involved Pratt, and so they said, well, there has to be reliance. Well, I don't see how that applies here. Reliance doesn't apply here, but the reasoning of it does, and it's consistent with Hall and the other cases, which is that reliance is the mechanism, the causal mechanism of fraud, and they accepted the holding that the prior cases like Hall had said that you have to show ordinary tort causation. That's why in the context of a fraud UCL claim, you had to show reliance, because that's the causal mechanism of fraud. But the Buckland issue was entirely separate and independent of that, and nothing in tobacco too suggests that the California Supreme Court would reject the Buckland decision. And so, you know, with those two alternative arguments. I don't think it went, I don't think Buckland went that far, but, I mean, you're saying they conceded it did, but I don't, I don't think it did. They said that precisely. I believe you. I believe you. In their motion to certify, that's why, that was the basis. In order to certify, they had to say it was controlling, so they said. I haven't had a chance to read that. I just got it today. I understand. But also, the claim is at best cumulative, because they have, they concede they have no monetary claim, Amazon watch. And so I think the district court appropriately concluded that it is, this was not a case for the strong deference that would be the case if you had a, you know. This is my problem again with the district court. It didn't dismiss out Amazon. Amazon is in there. Amazon is a domestic company. So, given that fact, it, it should have given strong deference to Amazon. All the cases, all the authority says you give strong deference to the choice of form of a domestic corporation. Some, but lesser to foreigners. And the district court did not dismiss Amazon. The Vendee case, actually, and other cases like Payne in the D.C. circuit, which is favorably cited in Piper, and then the, the second circuit cases we've cited, indicate that it's actually can be somewhat of a, a sliding scale, depending on whether or not the circumstances indicate that the choice of the U.S. forum by the parties indicated a judgment about convenience. No, what the Vendee said was that you had to make, the district court had to make a finding that the plaintiff had engaged in forum shopping. A finding. There's no finding in this district court opinion. That, to that extent, that specific rationale for why the court in the Vendee had not applied it does not apply here. That's true. But my point in submitting it is that the rationale that there isn't a rule that a U.S. corporation would go straight to strong deference is not in fact true. It's not consistent with Piper and with Payne and with the Vendee. I think you've made that point. Your time has expired. Thank you, Your Honor. Thank you. Four brief points, if I may, Your Honor. First, to the extent that the condition of land is at issue in this case, as in most cases of this kind, that's probably going to be dealt with by expert witnesses who are going to investigate it. Those, so far, the experts we've employed are from the United States, and we expect OXI would employ U.S. experts as well. In terms of whether there's a clear abuse of discretion under Piper, Piper says that where the district court has considered all relevant public and private interest factors, there may be no abuse of discretion. But here the district court did not consider all the relevant factors. There's no question that the district court did not consider enforceability of the judgment, for example. On that basis alone ---- Okay. What burden did OXI have in establishing that this was not a convenient forum? Well, the case law suggests that even where there are foreign plaintiffs, the Ninth Circuit says that the defendants must establish such oppression and vexation as to be out of proportion to the plaintiff's convenience. So they still bore a very high burden to show that the forum was inconvenient. Again, that may be difficult to show when they're ten miles from the courthouse. I wanted to make ---- They did not have a list of witnesses or ---- In terms of the witnesses, what Piper says is that you have to give the district court enough information to make a decision. And what this Court's decision in the recent case of Boston Telecommunications Group says, and it's repeating prior decisions of this Court, is that the district court needs to evaluate the materiality and importance of the witness's testimony. Well, there certainly wasn't enough evidence here to do that. The district court identified exactly two categories of witnesses which it thought would be only available in Peru, the physicians who treated plaintiffs, assuming that there are some, and Peruvian civil servants and consultants responsible for monitoring the environmental conditions in Block 1AB. Those are the only categories of witnesses identified in the district court's opinion. I wanted to make two brief points about Amazon Watch. First, we did not concede that we would lose under Buckland or Walker. What we conceded was that Amazon Watch does not have a restitutionary claim, and that if a restitutionary claim is required, then Amazon Watch's standing fails. But we never said that Buckland or Walker necessarily requires that, and that's something that the courts are in disarray about at the moment. Finally, as to the defense counsel's point, that Amazon Watch's claim is entirely cumulative or duplicative of the actual plaintiff's claim. First of all, I know of no authority suggesting that a plaintiff's claim can be ignored because it's duplicative. Second of all, it's not duplicative because there very well may be injunctive relief that Amazon Watch is entitled to seek that the actual plaintiffs are not. One example of that is in seeking to stop ongoing deceptive practices, plaintiffs who themselves are aware of the deception may no longer have standing to stop it in the future because they are no longer being harmed, whereas Amazon Watch, because it's extending resources to combat the deception and investigate it, may have such standing to seek such an injunction. Its claims are not duplicative here. I know time's almost up, but I just have a question. What discovery do you really need? I mean, if your argument is that they haven't met their burden to show fixation and oppression and all that, don't they need to come forward with something? I mean, what discovery do you need? Well, for example, we sought discovery over issues relating to corruption in the Peruvian court system and the defendants' experience with it. We also did seek discovery over the location of defendants' evidence and witnesses. Now, it is their burden to show, but, you know, assuming that they were to come forward with evidence that allows the district court to evaluate the materiality and importance of the witnesses, we would like to be able to do the same. For example, we're very concerned that since this project started in 1971, many of the witnesses with material evidence may be former Oxy employees who are not subject to party discovery, regardless of where the case is litigated, and so would only be available to compulsory process here in the United States. Okay. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Rymer, Wardlaw